CHAD D. HANSEN
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27191
Telephone: (336) 607-7308
Facsimile: (336) 734-2616
chadhansen@ktslaw.com

JONATHAN W. THOMAS (to apply *pro hac vice*)
BRYAN J. WOLIN (to apply *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
3 Times Square
New York, New York 10036
Telephone: (212) 775 8856
Facsimile: (212) 208 6849
jwthomas@ktslaw.com
bwolin@ktslaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| PAPER SHOOT TECHNOLOGIES INC., a foreign corporation, )<br><br>Plaintiff, )<br><br>v. )<br><br>2763072 ONTARIO INC., d/b/a SILVER MARKETING, a foreign corporation; PAPER SHOOT CAMERA LLC, a Delaware corporation; 1000994074 ONTARIO INC., a foreign corporation; and 1686946 ONTARIO INC., a foreign corporation, )<br><br>Defendants. ) | Case No. _____<br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Paper Shoot Technologies Inc. ("Paper Shoot") brings this Complaint against defendants 2763072 Ontario Inc. (d/b/a "Silver Marketing"), Paper Shoot Camera LLC ("PSC"), 1000994074 Ontario Inc., and 1686946 Ontario Inc. (jointly, "Defendants" or "Silver Marketing Group"), and alleges, on personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

COMPLAINT

## **NATURE OF THE ACTION**

1.      This action was necessitated by Silver Marketing Group's brazen attempt to steal Paper Shoot's brand, trademark rights, social media and website assets, and customers for itself. When that failed, Silver Marketing Group instead began developing a directly competing product—the Cappy Camera—in direct violation of the parties' distribution agreement. Once Paper Shoot became aware of Silver Marketing Group's scheme, Silver Marketing Group doubled down, embarking on a defamatory social media campaign accusing Paper Shoot of all manner of wrongdoing while converting all of Paper Shoot's social media and website assets to Cappy Camera branded assets.

2.      Silver Marketing Group's acts have caused Paper Shoot immediate, ongoing, and irreparable harm. Paper Shoot's customers, and subscribers to its U.S. social media accounts, have been inundated with marketing for a competing product, as well as defamatory statements about Paper Shoot. Though Paper Shoot has repeatedly tried to resolve this matter without resorting to litigation, Silver Marketing Group has responded by expanding its infringing and unlawful behavior.

3.      As recently as this week, Silver Marketing Group modified the website <https://papershootcamera.com> to state that Paper Shoot has rebranded and is "Now Cappy Camera."  That is false; Paper Shoot has not re-branded. Even more egregiously: the "Our Story" page, <https://papershootcamera.com/pages/about-us>, still lists Paper Shoot's actual owner George Lin as the "inventor" of Paper Shoot, but lists Gillain Gallant as the "Owner and CEO." That, too, is false. Ms. Gallant is the driving force behind the Silver Marketing Group, which does not have Paper Shoot's permission to use its marks, domain name, website, other assets.

4.      Silver Marketing Group's unlawful misappropriation of Paper Shoot's rights, brand, and assets must be stopped.

## **THE PARTIES**

5.      Plaintiff Paper Shoot is a corporation existing under the laws of Taiwan with its principal place of business at No. 151, Daxue Road, Sanxia Dist, New Taipei City 237303,

COMPLAINT

2

1   Taiwan.

2       6.    On information and belief, Defendant Silver Marketing is a corporation existing

3   under the laws of Ontario, Canada with its principal place of business at 1679 Heron Road,

4   Ottawa, Ontario, K1V 6A2.

5       7.    On information and belief, Defendant PSC is a Delaware limited liability company

6   with its principal place of business at 1679 Heron Road, Ottawa, Ontario, K1V 6A2.

7       8.    On information and belief, Defendant 1000994074 Ontario Inc. is a corporation

8   existing under the laws of Ontario, Canada with its principal place of business at 1679 Heron

9   Road, Ottawa, Ontario, K1V 6A2.

10       9.    On information and belief, Defendant 1686946 Ontario Inc. is a corporation

11   existing under the laws of Ontario, Canada with its principal place of business at 1679 Heron

12   Road, Ottawa, Ontario, K1V 6A2.

13           **JURISDICTION AND VENUE**

14       10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

15   §§ 1331 and 1338 and 15 U.S.C. § 1121. Additionally, this Court has supplemental jurisdiction

16   over Paper Shoot's state law claims under 28 U.S.C. § 1367(a) insofar as these claims are so

17   related to the federal claims in the action that they form part of the same case or controversy.

18       11.    This Court has personal jurisdiction over Defendants because as alleged *infra*,

19   Defendants have committed fraud on the United States Patent and Trademark Office ("USPTO"),

20   which is located in Alexandria, Virginia, and Paper Shoot's claims for relief arise out of those

21   wrongful acts.

22       12.    This Court also has personal jurisdiction over Defendants because, upon

23   information and belief, Defendants have knowingly and purposefully marketed and offered for

24   sale the infringing products to persons within the State of Virginia; Defendants regularly transact

25   and conduct business within the State of Virginia; and Defendants have otherwise made or

26   established contacts within the State of Virginia sufficient to permit the exercise of personal

27   jurisdiction.

28       13.    Defendants also are subject to nationwide jurisdiction under FED. R. CIV. P. 4(k)(2).

COMPLAINT

As alleged *supra*, Plaintiff's claims in this lawsuit arise under federal law. If Defendants' fraud on the PTO does not subject them to personal jurisdiction in the State of Virginia, then Defendants—Canadian entities, and a Canada-based Delaware entity—would not be subject to general personal jurisdiction in any other State in the United States. Nonetheless, subjecting Defendants to nationwide jurisdiction would comport with the United States Constitution and laws. For example, Defendants are using Plaintiff's intellectual property—including, for example, on *Plaintiff's* website—to advertise, promote, and offer for sale Defendants' products to consumers throughout the United States in United States Dollars. Accordingly, it is reasonable for Defendants to have to answer for their unlawful conduct throughout the United States.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this complaint occurred in this judicial district.

## **BACKGROUND**

### A.  **Paper Shoot's Digital Camera**

15.     Paper Shoot is a Taiwanese manufacturer of beloved and award-winning "point-and-shoot" digital cameras crafted from paper, which combine an eco-friendly design with modern technology (the "Paper Shoot Camera"), see below:

 

16.     The Paper Shoot Camera was invented by Taiwanese entrepreneur George Lin, who was inspired to create a simple yet meaningful way to capture memories, and his wife, Miffy Chen, who contributed her artistic vision and technical expertise to the design.

17.     The Paper Shoot Camera is well-known for its unique, compact design, its customizable features, and its use of filters to produce digital photos that replicate the visual effect of film photos. Paper Shoot also sells filter cards, camera lenses, and other camera accessories

COMPLAINT

including lens caps, camera cases, and camera straps.

18.     Paper Shoot has sold its PAPER SHOOT-brand cameras and related products under the PAPER SHOOT brand and mark since 2013 and in the United States since at least 2017. Paper Shoot's additional marks include the PAPER SHOOT NORTH AMERICA mark and accompanying design marks used in connection with Paper Shoot's North America website, https://papershootcamera.com ("Paper Shoot Website"); and the PAPER SHOOT CAMERA mark used in connection with Paper Shoot's camera products (together, with the PAPER SHOOT and PAPER SHOOT NORTH AMERICA marks, the "PAPER SHOOT Marks").

19.     Paper Shoot has spent substantial time, money, and effort in developing and promoting its PAPER SHOOT brand and promoting its products offered under the PAPER SHOOT Marks.  For example, Paper Shoot has promoted its products under the PAPER SHOOT Marks at the widely visited Museum of Modern Art in Manhattan, as well as Fotografiska in New York.   As another example, Paper Shoot promoted its products under the PAPER SHOOT Marks at the widely attended NY Now Expo in 2019.

20.     Consumers also receive widespread exposure to Paper Shoot's products offered under the PAPER SHOOT Marks.  For example, the widely circulated and read *Wall Street Journal* featured the PAPER SHOOT-brand camera in an August 5, 2014 article.  *See* **Exhibit 1**. Consumers also encounter Paper Shoot's products offered under the PAPER SHOOT Marks on widely viewed social-media platforms, such as YouTube and TikTok.   As a still further example, consumers encountered Paper Shoot's products offered under the PAPER SHOOT Marks when radio personality, Jack Socha, introduced them on his show.

21.     Products advertised and sold under the PAPER SHOOT Marks have been a commercial success.  For example, such sales were approximately 18,000 units in the United States between 2017 and 2020 alone.

22.     As a result of these efforts, consumer exposure, and sales success, Paper Shoot has developed valuable common-law trademark rights in its PAPER SHOOT Marks, extending nationwide.

COMPLAINT

**B. <u>Silver Marketing Group's Solicitation of Paper Shoot</u>**

23.     In October 2020, Gillian Gallant and Jack Bisson, owners of Silver Marketing, and the other defendants, contacted Paper Shoot's Taiwan headquarters and offered to distribute Paper Shoot Cameras in North America. Ms. Gallant and Mr. Bisson believed in the potential of Paper Shoot after seeing a video about Paper Shoot Cameras that had gone "viral" on the TikTok social media application, receiving over 2.4 million views.

24.     On or about October 30, 2020, Paper Shoot and Silver Marketing executed a distribution agreement that gave Silver Marketing the exclusive right to distribute Paper Shoot Cameras in the United States and Canada. That agreement is attached hereto as **Exhibit 2**. In preparation for that partnership, Paper Shoot granted Silver Marketing express permission to launch the Paper Shoot Website.  *See* **Exhibit 3** attached.  In preparation for that partnership, Paper Shoot also granted Silver Marketing permission to register the domain name <papershootcamera.com> ("Paper Shoot Domain Name"), which it did October 29, 2020.

25.     Through Silver Marketing, Paper Shoot continued distributing Paper Shoot Cameras under the PAPER SHOOT Marks in North America in December 2020. During the holiday season of 2020, Paper Shoot shipped hundreds of cameras to North America each day to be distributed by Silver Marketing under the terms of the exclusive distribution agreement.

26.     On July 21, 2021, Paper Shoot and Silver Marketing executed a revised distribution agreement that gave Silver Marketing exclusive distribution rights to the United Kingdom, in addition to the United States and Canada (the "Agreement"). That Agreement is attached hereto as **Exhibit 4**.

27.     Section 1.1 of the Agreement provides that "the trade mark 'PAPER SHOOT'" is "owned exclusively by PAPER SHOOT throughout the world in connection with Paper Shoot digital cameras [and] related products."

28.     Under section 4.2 of the Agreement, Paper Shoot granted Silver Marketing a nonexclusive license to use the PAPER SHOOT trademark "and any other intellectual property rights relating to the Products, *as may be agreed upon by the Parties*, to allow Silver Marketing to market and promote the Products" in its assigned territories. (Emphasis added.)

COMPLAINT

29.     Under section 4.3 of the Agreement, Silver Marketing agreed to the following:

(a)     that "it will, at the expense of [Paper Shoot], assist and co-operate with [Paper Shoot] to the extent reasonably requested by [Paper Shoot] to protect the Intellectual Property Rights of" Paper Shoot;

(b)     that "it will take no steps, either directly or indirectly, to claim or dispute the ownership, enforceability, or validity of the Intellectual Property Rights" of Paper Shoot; and

(c)     that "it will not copy, translate, convert, modify, reverse engineer, decompile, disassemble, download, re-format, *create derivate works of*, distribute, sell, license, lease or rent . . . any property dealt with in this Agreement in which [Paper Shoot] owns Intellectual Property Rights except as expressly provided for."

(Emphasis added.)

30.     Section 6.1 of the Agreement contains a "Non-Competition" provision, under which Silver Marketing agreed to refrain from directly or indirectly "offer[ing] or provid[ing]" product "similar" to the product "manufactured by PAPER SHOOT and purchased and distributed by Silver Marketing pursuant to th[e] Agreement." Under that same provision Silver Marketing also agreed not to attempt to influence any customer to "terminate or downgrade its business relationship with" Paper Shoot or otherwise "act in any manner that is detrimental to the relations between [Paper Shoot] and its customers." According to the terms of the Agreement, the Non-Competition provision would survive the Agreement's termination.

31.     Under section 6.2 of the Agreement, Silver Marketing acknowledged "that a breach of any of the provisions of Section 6.1 will cause irreparable harm to the offended Party and that actual damages may be difficult to ascertain and, in any event, may be inadequate." Accordingly, Silver Marketing agreed that "in the event of such breach, the offended Party will be entitled, with proof of damage, to seek and obtain injunctive relief in any court of competent jurisdiction, in addition to such other legal or equitable remedies as may be available." Silver Marketing also agreed to "promptly consent in writing to PAPER SHOOT obtaining a temporary restraining order, or any preliminary or permanent injunction, restraining such actions which are in violation

COMPLAINT

of any of the" non-competition provisions in section 6.1 of the Agreement.

32.     As a result of Silver Marketing's unlawful conduct discussed herein, on September 13, 2024, Paper Shoot, in writing, terminated the Agreement.

**C. Paper Shoot's Termination of the Agreement**

33.     On or around February 15, 2022, while still bound by the terms of the Agreement, Silver Marketing formed the entity Defendant Paper Shoot Camera LLC, which Silver Marketing Group has admitted was named as part of a scheme to reinforce the false claim that Silver Marketing Group owns the Paper Shoot brand.

34.     In furtherance of that scheme, on May 4, 2022, PSC filed a use-based application to register the PAPER SHOOT CAMERA word mark, which matured to U.S. Registration No. 7,084,784. In its application, PSC listed the "first use" of the mark as having occurred "[a]t least as early as" May 4, 2022, despite knowing that Paper Shoot had been marketing and selling Paper Shoot Cameras in the United States under the PAPER SHOOT CAMERA mark for years prior to 2020. To support its alleged first use date, PSC included images of Paper Shoot's use of the PAPER SHOOT Marks, thereby claiming Paper Shoot's use as its own. The specimen that PSC provided to the USPTO was also a Paper Shoot Camera. PSC did not disclose to the USPTO that it was merely a distributor of the Paper Shoot Cameras and owned no rights to the mark. The trademark application was registered on June 20, 2023. On September 6, 2024, Paper Shoot Camera filed a petition to cancel the registration. The cancellation proceeding is pending.

35.     Sometime on or before January 22, 2024, Silver Marketing Group unilaterally removed all references to the original Paper Shoot team from the "Meet Our Team" page of the Paper Shoot Website and declared Ms. Gallant "Owner and CEO" and Mr. Bisson "COO and Co-Owner," leading third parties, including at least one Chinese manufacturer, to believe that Silver Marketing Group were the owners of the Paper Shoot brand. *See* **Exhibit 5**, attached. That change to the Paper Shoot Website was without authorization and lasted until at least May 15, 2024.

36.     In or about May 2024, Silver Marketing Group also began selling new Paper Shoot branded products on the Paper Shoot Website, including those depicted in the below images. These products were not made, approved, or authorized by Paper Shoot, whether under the terms

COMPLAINT

of the Agreement or otherwise.



37.     At some point between May 15 and June 4, 2024, Silver Marketing Group revised the Paper Shoot Website to feature Mr. Lin as the "Paper Shoot Inventor," but the revised Website continued to incorrectly refer to Ms. Gallant as the "Owner and CEO." *See* **Exhibit 6**, attached. As justification for this redesign, Defendants told Paper Shoot that it was important for them "to position [them]selves as owners."

38.     Also without authorization, Silver Marketing Group revised the Paper Shoot Website to remove the PAPER SHOOT NORTH AMERICA marks and replace them with confusingly similar marks and logos shown below:

(a)     PAPER SHOOT NORTH AMERICA marks:




(b)     Silver Marketing Group's unauthorized branding:




39.     Paper Shoot wrote to Silver Marketing Group concerning the unauthorized logo change, but Silver Marketing Group did not respond or revert the logos.

40.     In June 2024 PSC entered into a confidentiality agreement with a Chinese

COMPLAINT

manufacturer regarding the development of Silver Marketing Group's own camera design, which PSC referred to in the confidentiality agreement as "Paper Shoot Camera Products." Paper Shoot learned about Silver Marketing Group's agreement with the Chinese manufacturer shortly thereafter from a Taiwanese supplier, who was confused as to the identity of PSC and asked whether Paper Shoot was planning to expand into China.

41.     On or around August 6, 2024, while still bound by the terms of the Agreement with Paper Shoot, Silver Marketing Group sent the Chinese manufacturer a deposit in order to commence the production of Silver Marketing Group's own camera line.

42.     While still bound by the Agreement, Silver Marketing Group marketed and sold Paper Shoot Cameras to other territories outside of the United States, Canada, and United Kingdom, in violation of the terms of the Agreement. Paper Shoot learned of this conduct and informed Silver Marketing Group that it could ship only within its assigned territories. Silver Marketing Group briefly ceased shipping to unauthorized territories but soon resumed their shipments to countries outside their designated territories.

43.     While still bound by the Agreement, and continuing after Paper Shoot's termination of the Agreement, Silver Marketing Group sold extended warranties for the Paper Shoot Camera that it had no right or authorization to sell.

44.     In light of Silver Marketing Group's unauthorized use of the Paper Shoot brand and ongoing breaches of the Agreement, and out of concern that Silver Marketing Group was intending to manufacture a counterfeit product using the PAPER SHOOT Marks, Paper Shoot, in writing, notified Silver Marketing Group on August 20, 2024 of its intent to terminate the Agreement.

45.     When Silver Marketing Group failed to cure its breaches, Paper Shoot again explained to Silver Marketing Group, in writing, the nature of its claims and demanded it cease its infringing activities and other unlawful conduct. Attached herein as **Exhibit 7** is a copy of the cease and desist letter Paper Shoot's Taiwanese counsel sent to Silver Marketing Group's counsel on September 13, 2024. In that same letter, Paper Shoot unilaterally terminated the Agreement.

COMPLAINT

**D. Silver Marketing Group's Post-Termination Attempts to Appropriate the PAPER SHOOT Brand**

46.    Silver Marketing Group continued to persist in infringing and violative activities after receiving Paper Shoot's cease and desist letter.

47.    On or about September 30, 2024, just three weeks after Paper Shoot terminated the Agreement, Silver Marketing Group announced that it had developed a compact digital camera, called the "Cappy Camera," see below:



48.    Shortly thereafter, on or about October 1, 2024, Silver Marketing Group released a statement designed to mislead the public and Paper Shoot's other partners and distributors, including but not limited to stating that Paper Shoot failed to deliver products to Silver Marketing despite receiving payment for said products. Silver Marketing Group even went so far as to directly contact Paper Shoot's other distributors to amplify and reiterate such false claims. As a result of Silver Marketing Group's false claims, Paper Shoot's distributors in Australia and Portugal notified Paper Shoot of their intent to cease working with Paper Shoot.

49.    Silver Marketing Group has admitted on social media that its Cappy Camera was designed based on consumer feedback it received during the years it served as the exclusive North American distributor for Paper Shoot products. Silver Marketing Group's admissions are attached hereto as **Exhibit 8**. *See also* Jeremy Gray, *Amid Kerfuffle, Former Paper Shoot Camera*

COMPLAINT

*Distributor Launches Competing Toy Camera*, PetaPixel, Oct. 7, 2024, available at: https://petapixel.com/2024/10/07/amid-kerfuffle-former-paper-shoot-camera-distributor-launches-competing-toy-camera/ (last accessed Nov. 7, 2024) ("PetaPixel Article").

50.     Unsurprisingly, the media has reported "[t]he Cappy Camera's features are, by and large, ***similar*** to those offered by the Paper Shoot Camera."  *See* **Exhibit 9**; *see also* PetaPixel Article.

51.     Silver Marketing Group also misappropriated and renamed Paper Shoot's social media and website assets, including Paper Shoot's Instagram, TikTok, Facebook, and Pinterest accounts, as well as used the Paper Shoot Domain Name, to promote the Cappy Camera, thereby confusing Paper Shoot's loyal customers into believing that the Cappy Camera is a direct successor to the Paper Shoot Camera.

52.     Specifically, on or around October 4, 2024, Silver Marketing Group revised the Paper Shoot Website to feature an announcement of an upcoming "next chapter." An image of that website page is provided below and attached hereto as **Exhibit 10**.



53.     Paper Shoot then discovered that from at least October 4, 2024 until November 1, 2024, Silver Marketing Group removed all content from the Paper Shoot Website except for a message reading "Change is Coming"; a link to Paper Shoot Cameras sold online at Amazon.com; and a link titled "Be Notified Of Our New Camera" that redirected consumers to the Cappy

COMPLAINT

Camera website, <https://cappycamera.com>. An image of that website is provided below and attached hereto as **Exhibit 11**.



## Change Is Coming

<span>SHOP PAPER SHOOT ON AMAZON</span>   <span>BE NOTIFIED OF OUR NEW CAMERA</span>

54.     Silver Marketing Group has also used Paper Shoot's email distribution list to promote the Cappy Camera, perpetuating consumer confusion as to an association between the entities and products. In one such email to consumers, Silver Marketing Group stated that Paper Shoot has "rebranded from Paper Shoot Camera to Cappy Camera," which conveys the false claim that Cappy Camera is an unauthorized successor to Paper Shoot. An image of that communication is provided below and attached hereto as **Exhibit 12**.

> We are excited to share that we have rebranded from Paper Shoot Camera to Cappy Camera! This new name reflects our vision for the future, and we're continuing to provide the innovative camera products you've come to love.

55.     Silver Marketing Group's continuing infringing activity demonstrates a willful and bad faith intent to create confusion, deception, and mistake in the minds of Paper Shoot's consumers and potential new consumers.

56.     Because of widespread confusion as to the source of PSC's products and because of PSC's unauthorized use of the PAPER SHOOT Marks, Domain Name, Website, and social-media accounts in connection with cameras similar to the Paper Shoot Camera, Paper Shoot's goodwill in its PAPER SHOOT Marks and brand has been and will be damaged. Some examples of actual confusion are provided below and attached hereto as **Exhibit 13**.

COMPLAINT



_chaos_organised I don't understand - is it just the same as the papershoot camera but different manufacturer?
6d  8 likes  Reply

andyomo what's the difference between these and the papershoot cams?

f1refl13s_ what happened to the paper shoot?
1d  3 likes  Reply

thenatlens Omg! Big rebrand moment
5d  2 likes  Reply

hemangi.govil Is it same as paper shoot camera?
2d  5 likes  Reply

giannap1010 GETCAPPY !!! i love my papershoot with my entire being, so excited to see what's in store for the future 🙌
3d  Reply

foreverxxiv Will this camera be better than or basically the same as paper camera?
5d  1 like  Reply

17saltwatersoul20 @ltlv97 @getcappycam okie I'm confused by this, is this true? I love both, I'll still be shopping Cappy, but I'm def confused 😩
2d  Reply

mk.margaret4929 i'm very confused, what happened with papershoot and are their products still available? i have a papershoot camera and i just wanted to know if i am still able to buy filters and cases for it.
21h  Reply

nicksucio Looks like paper shoot camera images 😟
2d  5 likes  Reply

nochill.nofilter Wait so if we bought the papershoot camera before we need to get a whole new camera and accessories?
3d  3 likes  Reply

smallbigboss @getcappycam i'd really love to get my hands on this!! An upgraded version of the papershoot
2d  2 likes  Reply

**E.  Silver Marketing Group's Other Unlawful Acts**

57.     Silver Marketing Group has been selling the remaining stock of Paper Shoot Cameras at steeply discounted prices without first receiving approval from Paper Shoot, in violation of the explicit pricing terms of the Agreement found in section 1.1(f). That section provides that for any "Promotional Campaign" where the Paper Shoot Cameras are priced at a discount for a period of time, "Distributor [Silver Marketing] must inform PAPER SHOOT by mail before the promotional campaign start[s]." The discounted pricing also violates the noncompetition provision of the Agreement, causing harm to Paper Shoot's brand.

58.     In social media posts, on podcasts, and elsewhere, Silver Marketing Group has made numerous false and defamatory statements accusing Paper Shoot of engaging in unlawful activity or otherwise violated the Agreement, including by: (i) knowingly shipping defective products, (ii) not having proper quality control procedures for Paper Shoot Cameras, (iii) "lying" to Silver Marketing Group, and (iv) "encroaching" on and stealing the North America market from

COMPLAINT

14

Silver Marketing Group, see examples below:







59.    Silver Marketing Group also falsely and publicly accused Paper Shoot of breaching the Agreement by failing to send product that Silver Marketing Group had ordered and paid for. Section 3.2 of the Agreement very plainly states that "A purchase order provided by Silver Marketing to PAPER SHOOT will constitute an *offer* to PAPER SHOOT." *See* Ex. 4 (emphasis added.) For Paper Shoot to accept, and therefore be bound by, any purchase order, Paper Shoot

COMPLAINT

had to return "an executed acknowledgement copy of the purchase order within forty eight (48) hours following receipt." *See id*. Paper Shoot never accepted the orders at issue, and never received any payment for said orders.

60.     On November 1, 2024, Paper Shoot, through its attorneys, again wrote to Silver Marketing Group to explain the nature of its claims and demand Silver Marketing Group cease their unauthorized use of its mark and other unlawful conduct, but Silver Marketing Group continues to persist in such infringing and violative activities. Attached hereof as **Exhibit 14** is a copy of the cease and desist letter Paper Shoot's United States counsel sent to Silver Marketing Group's counsel on November 1, 2024.

61.     Two days later, on November 3, Paper Shoot discovered that Silver Marketing Group had again revised the Paper Shoot Website to announce: "We're Now Cappy Camera." Silver Marketing Group is continuing to confuse consumers about any relationship between Paper Shoot and Silver Marketing Group, adding: "We've gotten an upgrade." The home page of the redesigned website is shown below and attached hereto as **Exhibit 15**.



62.     The "Our Story" page of the redesigned website introduces the company as "Paper Shoot Camera"; prominently displays the CAPPY CAMERA mark; and features Mr. Lin as the

COMPLAINT

"Paper Shoot Inventor," further confusing consumers as to any association between the Silver Marketing Group and Paper Shoot. That page of the redesigned Website is shown below and attached hereto as **Exhibit 16**.



63.    Upon information and belief, Silver Marketing Group intends to continue promoting its competing products using the PAPER SHOOT Marks, Domain Names, Website, and social-media accounts in the United States, confusing consumers and causing Paper Shoot immediate and irreparable harm. Silver Marketing Group's refusal to take corrective action leaves Paper Shoot with no choice but to bring this action to protect its valuable intellectual property assets and to curb the extensive consumer confusion caused by Silver Marketing Group's deliberate scheme to profit from the goodwill and consumer recognition of the PAPER SHOOT Marks and brand. Silver Marketing Group's conduct also necessitates Paper Shoot's contemporaneous filing of an application for a temporary restraining order and motion for a preliminary injunction.

COMPLAINT

## FIRST CLAIM FOR RELIEF

### (Breach of Contract Against Silver Marketing)

### (Virginia Law)

64.     Paper Shoot realleges and incorporates by reference the allegations of the preceding paragraphs.

65.     The Agreement, including its Non-Competition provision, is valid and enforceable.

66.     Paper Shoot has performed all conditions, obligations, and promises under the Agreement, except to the extent excused by Silver Marketing's breaches.

67.     Silver Marketing has breached the Non-Competition provision of the Agreement, including by:

(a)     forming the entity Paper Shoot Camera LLC and using it to promulgate the false claim that Silver Marketing is the owner of the Paper Shoot brand;

(b)     designing, developing, marketing, offering for sale, and selling a directly competing, similar product that Silver Marketing has admitted was designed based on consumer feedback it received while serving as Plaintiff's exclusive distributer;

(c)     holding itself out to consumers and potential product manufacturers as the owner of the Paper Shoot brand, including by modifying the Paper Shoot Website to remove references to Paper Shoot and its rightful owners;

(d)     using branding and logos that are confusingly similar to Paper Shoot's logo and PAPER SHOOT Marks;

(e)     misappropriating Paper Shoot's social media accounts and website assets to promote its competing product, deceiving consumers as to the relationship between Paper Shoot and Silver Marketing;

(f)     marketing and selling Paper Shoot Cameras at steeply discounted prices in violation of the terms of the Agreement; and

(g)     repeatedly making false and defamatory comments about Paper Shoot and its business practices.

68.     As a direct and proximate result of Silver Marketing's breaches of the Agreement,

COMPLAINT

18

Paper Shoot has suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Federal Trademark Infringement, Unfair Competition, and False Association Against All Defendants, 15 U.S.C. § 1125(a)(1)(A))

69.     Paper Shoot realleges and incorporates by reference the allegations of the preceding paragraphs.

70.     Paper Shoot possesses valid and superior common law rights in the PAPER SHOOT Marks.

71.     As mere licensees, Defendants never acquired ownership of the PAPER SHOOT Marks.

72.     If, somehow, Defendants could prove ownership of any mark that includes "Paper" and "Shoot," in whole and/or in part, for digital cameras and/or related goods and services, by reason of Paper Shoot's prior adoption and use of its marks, Paper Shoot's rights are superior to and supersede any rights Defendants may own.

73.     Defendants had actual knowledge of Paper Shoot's prior and superior rights to the PAPER SHOOT name and marks, by reason of its distribution of Paper Shoot's camera products bearing the PAPER SHOOT Marks.

74.     The PAPER SHOOT Marks are inherently distinctive when used for digital cameras and related accessories.

75.     By virtue of Paper Shoot's advertising and promotional efforts, consumers' widespread exposure to products offered under the PAPER SHOOT Marks, and sales success of those products, the PAPER SHOOT Marks also have acquired distinctiveness and are commercially strong source identifiers of and for Paper Shoot's products.

76.     On information and belief, Defendants intend to promote products similar to those of Paper Shoot under the PAPER SHOOT Marks.

77.      The use by Defendants of the PAPER SHOOT Marks is without the permission or authorization of Paper Shoot.

78.     The class of customers for the products offered by Defendants is substantially the

COMPLAINT

19

same class of customers to whom Paper Shoot offers its products.

79.     In view of the substantially similar nature of the parties' products, the confusing similarity caused by the use of the same trademark by the two parties, and the substantially similar channels of trade and classes of purchasers of the parties' products, Defendants' continued use of PAPER SHOOT Marks has actually caused and is likely to cause confusion, mistake, and deception among purchasers and the public generally, leading them to believe, falsely, that Defendants' products are those of, sponsored or approved by, or in some way connected with Paper Shoot to the irreparable injury of Paper Shoot's trade and goodwill and to the injury of the public.

80.     On information and belief, Defendants' acts complained of herein have been in furtherance of their bad-faith scheme to willfully appropriate Paper Shoot's rights in the PAPER SHOOT Marks and of the valuable goodwill of Paper Shoot's business, thereby unlawfully benefitting Defendants.

81.     On information and belief, the continued use of the PAPER SHOOT Marks by Defendants will be likely to injure the business and reputation of Paper Shoot and will damage the distinctive quality of Paper Shoot's PAPER SHOOT Marks.

82.     Defendants' use of the PAPER SHOOT Marks is without Paper Shoot's consent and is likely to cause confusion, mistake, or deception and constitutes direct infringement of Paper Shoot's federal trademark rights and federal unfair competition in the form of passing off, false association, and false designation of origin, all in direct violation of 15 U.S.C. § 1125(a).

83.     Paper Shoot is thus entitled to permanent injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

### THIRD CLAIM FOR RELIEF
### (False Advertising Against All Defendants, 15 U.S.C. § 1125(a)(1)(B))

84.     Paper Shoot realleges and incorporates by reference the allegations of the preceding paragraphs.

85.     The false and misleading acts complained of aforesaid actually deceive and are

COMPLAINT

likely to deceive the public into believing, falsely, that Defendants' services are those of, sponsored or approved by, or are in some way connected with Paper Shoot all to the irreparable injury of Paper Shoot's trade and goodwill and to the injury of the public.

86.     The aforesaid acts constitute federal false advertising in the form of false commercial representation, in direct violation of 15 U.S.C.§ 1125(a)(1)(B).

87.     Paper Shoot is thus entitled to permanent injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**(Virginia Trademark Infringement Against All Defendants)**

88.     Paper Shoot realleges and incorporates by reference the allegations of the preceding paragraphs.

89.     Defendants' use of the PAPER SHOOT Marks without the permission or authorization of Paper Shoot is likely to cause confusion, mistake and deception among consumers and the public generally. Despite such a likelihood of public confusion, mistake or deception, Defendants have continued to use and are presently using Paper Shoot's marks and disregarding Paper Shoot's demands that Defendants cease this activity.

90.     Upon information and belief, Defendants continued use of the PAPER SHOOT Marks is likely to injure the activity and reputation of Paper Shoot, will diminish the distinctive quality of the PAPER SHOOT source identifying marks, and cause irreparable injury to the PAPER SHOOT Marks, to Paper Shoot's goodwill, and to the public.

91.     Defendants' wrongful acts constitute common law trademark infringement in Virginia.

92.     The aforesaid acts of Defendants are greatly and irreparably damaging to Paper Shoot's PAPER SHOOT Marks and will continue to be greatly and irreparably damaging to Paper Shoot unless enjoined by this Court.

93.     Paper Shoot is therefore entitled to injunctive relief and to recover actual damages, attorneys' fees, and punitive damages to the full extent provided for by the common law of the

COMPLAINT

Commonwealth of Virginia.

## FIFTH CLAIM FOR RELIEF

### (Virginia Unfair Competition Against All Defendants)

94.      Paper Shoot realleges and incorporates by reference the allegations of the preceding paragraphs.

95.      As described more fully herein, Defendants' wrongful acts constitute common law unfair competition in that said acts:

(a)      enable and will continue to enable Defendants to obtain the benefit of and trade on Paper Shoot's goodwill;

(b)      damage and will continue to damage Paper Shoot's goodwill in that Paper Shoot does not have control over Defendants' operations; and

(c)      cause, have caused, and are likely to continue to cause confusion, mistake, or deception in the minds of the public.

96.      The aforesaid acts of Defendants are greatly and irreparably damaging to Paper Shoot and will continue to be greatly and irreparably damaging to Paper Shoot's PAPER SHOOT Marks and associated goodwill unless enjoined by this Court, and Paper Shoot is without an adequate remedy at law.

97.      This association between the Defendants' use of the marks and Paper Shoot's use of the marks is likely to impair the distinctiveness of Paper Shoot's PAPER SHOOT Marks sand harm the reputation of Paper Shoot's marks.

98.      The aforesaid acts constitute unfair competition in direct violation of Virginia common law.

99.      Paper Shoot is therefore entitled to injunctive relief and to recover actual damages, attorneys' fees, and punitive damages to the full extent provided for by the common law of the Commonwealth of Virginia.

## SIXTH CLAIM FOR RELIEF

### (Fraud On The United States Patent & Trademark Office Against All Defendants)

100.      Paper Shoot realleges and incorporates by reference the allegations of the preceding

COMPLAINT

paragraphs.

101. Defendants, through their duly authorized representative, filed Application Serial No. 97/394043 on May 4, 2022, pursuant to 15 U.S.C. § 1051(a), to register the PAPER SHOOT CAMERA word mark for use in connection with digital cameras.

102. Defendants, through their duly authorized representative, stated in Application Serial No. 97/394043 that they believed themselves to be the owner of the trademark they were seeking to register.

103. Defendants, through their duly authorized representative, also stated that they knew of no other person or entity that had the right to use the PAPER SHOOT CAMERA trademark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the good/services of such other person, to cause confusion or mistake or to deceive.

104. Defendants' representations of fact in their Application were knowingly false and material. Prior to seeking registration of the PAPER SHOOT CAMERA word mark, Silver Marketing Group, in its role as the North American distributor for Paper Shoot Cameras, had actual knowledge of Paper Shoot's ownership of, use of, and rights to the PAPER SHOOT Marks, including the PAPER SHOOT CAMERA word mark, in connection with digital cameras.

105. Paper Shoot never consented to the registration or the unlicensed use of the PAPER SHOOT Marks by Defendants or their agents, servants, and employees or by those acting in concert or participation with them.

106. On information and belief, Defendants intended to deceive the USPTO in misrepresenting its knowledge of Paper Shoot's use of and superior rights in the PAPER SHOOT CAMERA mark in order to obtain the registration. Indeed, in their Application Defendants intentionally passed off Paper Shoot's use of the PAPER SHOOT CAMERA mark as their own.

107. On June 20, 2023, U.S. Registration No. 7,084,784 of the PAPER SHOOT word mark was issued to Defendants, despite the false and material representations they made in Application Serial No. 97/394043, causing irreparable harm to Paper Shoot unless the registration is canceled.

COMPLAINT

108.    138. Wherefore, Registration No. 7,084,784 has been fraudulently obtained in violation of 15 U.S.C. § 1064(3) and should be canceled.

### SEVENTH CLAIM FOR RELIEF

**(Misappropriation Of Trade Secrets Against All Defendants, Va. Code Ann. § 59.1-336)**

109.    Paper Shoot realleges and incorporates by reference the allegations of the preceding paragraphs.

110.    The technology, design, and development of Paper Shoot Cameras has been maintained by Paper Shoot as confidential material. Paper Shoot has taken reasonable steps to ensure the secrecy of that confidential material, which is neither generally known nor readily ascertainable through legitimate means.

111.    The technology, design, and development of Paper Shoot Cameras has actual and potential economic value to Paper Shoot's competitors, and they constitute trade secrets of Paper Shoot.

112.    Paper Shoot's email distribution list also constitutes a trade secret. The list is not generally known and not readily ascertainable by proper means, and Paper Shoot has taken reasonable efforts to maintain its secrecy. Moreover, the distribution list has independent economic value in that it could be used by a competitor to determine where to apply its resources and who to target, as Defendants themselves have demonstrated.

113.    Upon information and belief, Defendants have misappropriated Paper Shoot's trade secrets as alleged above, to the competitive detriment of Paper Shoot. Defendants are benefitting from their misappropriation and use of Paper Shoot's trade secrets in that they have developed a directly competing product using Paper Shoot's proprietary information and have converted Paper Shoot's email distribution list to their own use, all without authorization.

114.    Unless Defendants' conduct alleged herein is enjoined by the Court, Paper Shoot will continue to suffer great and irreparable harm from Defendants' continued use and disclosure of its trade secrets.  Under Va. Code Ann. § 59.1-337, Paper Shoot is entitled to preliminary and permanent injunctions to prevent actual or threatened misappropriation and misuse of Paper Shoot's trade secrets.

COMPLAINT

115.    As a proximate result of Defendants' misappropriation of Paper Shoot's trade secrets, Paper Shoot has suffered damages in an amount to be proven at trial.

116.    Defendants have been unjustly enriched by their misappropriation of Paper Shoot's trade secrets in an amount to be proven at trial.

117.    Defendants' misappropriation of Paper Shoot's trade secrets was willful and malicious. Therefore, Paper Shoot is also entitled to an award of punitive damages and reasonable attorneys' fees under Va. Code Ann. §§ 59.1-338 and 59.1-338.1.

## EIGHTH CLAIM FOR RELIEF
### (Cybersquatting Against All Defendants, 15 U.S.C. § 1125(d))

118.    Paper Shoot realleges and incorporates by reference the allegations of the preceding paragraphs.

119.    The PAPER SHOOT Marks were distinctive as October 29, 2020, *i.e.*, the registration date of the Paper Shoot Domain Name.

120.    Defendants' use of the Paper Shoot Domain Name is confusingly similar to the PAPER SHOOT Marks.

121.    Defendants use the Paper Shoot Domain Name in bad faith to divert customers away from Paper Shoot and create a likelihood of confusion between Paper Shoot's and Defendants' products.

122.    Defendants have no bona fide noncommercial or fair use of the mark in connection with the Paper Shoot website.

123.    The aforesaid acts constitute cybersquatting under 15 U.S.C. § 1125(d).

124.    Paper Shoot is thus entitled to permanent injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(d), 1116, and 1117.

## NINTH CLAIM FOR RELIEF
### (Defamation Against All Defendants)

125.    Paper Shoot realleges and incorporates by reference the allegations of the preceding paragraphs.

COMPLAINT

25

126.    Defendants intentionally published false and defamatory statements that have injured Paper Shoot's professional reputation and pursuit of its business. The statements were unprivileged communications.

127.    Specifically, in public statements on social media and in a podcast conversation, Defendants accused Paper Shoot of unethical and unprofessional conduct, including breach of contract, knowingly shipping defective products, not having proper quality control procedures in place, lying to and betraying Silver Marketing, and stealing the North American market from Silver Marketing.

128.    Defendants made the false and defamatory statements with actual malice. The statements were motivated by ill will, and Defendants actually knew the statements were false at the time they made them or made the statements with reckless disregard for their truth or falsity.

129.    As a proximate result of the false and defamatory statements made by Defendants, Paper Shoot has suffered injury to its business and professional reputation, in an amount to be proven at trial. Because Defendants acted with actual malice, Paper Shoot is also entitled to recover punitive damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

Paper Shoot prays for judgment as follows:

(a)    That this Court order Defendants and their officers, affiliate companies, agents, servants, employees, successors, licensees, and assigns, and all others in concert and privity with them, be enjoined permanently from: (1) using the PAPER SHOOT Marks, any variation of the PAPER SHOOT designation, or any mark that is confusingly similar to any of Plaintiff's Marks in connection with digital camera products and other related goods and services, including on Defendants' websites, social media sites, third-party websites, letterhead, signage, advertising, or promotional material, either in print or broadcast or electronic form or other forms either separately or compositely with other words, symbols or devices; and (2) in any manner imitating Plaintiff's PAPER SHOOT Marks, for the purpose of acquiring Plaintiff's trade and goodwill by imitation, fraud, mistake, or deception;

(b)    That Defendants be ordered to immediately cease production and marketing of its

COMPLAINT

Cappy Camera;

(c)     That Defendants be ordered to prohibit selling any remaining Paper Shoot Cameras below the price agreed upon under the terms of the Agreement;

(d)     That Defendants be ordered to immediately cease use of and transfer control of the Paper Shoot Domain Name, as well as any websites infringing the PAPER SHOOT Marks, including <https://papershootcamera.com> , and to transfer Paper Shoot's Instagram, TikTok, Facebook, and Pinterest accounts, and any other digital or physical asserts currently or previously associated with Paper Shoot, to Plaintiff;

(e)     That Defendants be ordered to expressly abandon all filings and registrations for the PAPER SHOOT CAMERA word mark worldwide, including U.S. Reg. No. 7,084,784;

(f)     That Defendants be ordered to: (1) immediately and publicly issue corrective advertising to cure the confusion created in the marketplace by disclaiming, in writing, any association between Paper Shoot and the Cappy Camera or Silver Marketing Group; and (2) immediately and publicly retract the false and defamatory statements that Silver Marketing Group circulated on social media accounts and other online platforms accusing Paper Shoot of breach of contract and operating in bad faith;

(g)     That Defendants be ordered to pay compensatory, punitive, and enhanced damages, as well as Paper Shoot's attorneys' fees and costs, as demanded in the Claims set forth above;

(h)     That Defendants be ordered to pay prejudgment interest on the foregoing relief;

(i)     That this Court deem Defendants' conduct "exceptional" and award Paper Shoot its reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a); and

(j)     That this Court grant such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Paper Shoot hereby demands trial by jury of all issues triable by a jury.

Dated: November 8, 2024          Respectfully submitted,

By: /s/ Chad D. Hansen
CHAD D. HANSEN
Virginia Bar No. 96705

COMPLAINT

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27191
Telephone: (336) 607-7308
Facsimile: (336) 734-2616
chadhansen@ktslaw.com

JONATHAN W. THOMAS (to apply *pro hac vice*)
BRYAN J. WOLIN (to apply *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
3 Times Square
New York, New York 10036
Telephone: (212) 775 8856
Facsimile: (212) 208 6849
jwthomas@ktslaw.com
bwolin@ktslaw.com

*Attorneys for Plaintiff Paper Shoot Technologies Inc.*

COMPLAINT

## VERIFICATION

I, George Lin, am the co-founder and owner of Plaintiff Paper Shoot Technologies Inc. I have read the foregoing Verified Complaint. To the best of my knowledge, information, and belief, the allegations in this Verified Complaint are true and accurate as of the date below.

Pursuant to 28 U.S.C. § 1746(1), I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on ⸏ November, 2024.

_George Lin_
George Lin

1

<u>**CERTIFICATE OF SERVICE**</u>

2

3        I HEREBY CERTIFY that, on November 8, 2024, I electronically filed the foregoing

4    document with the Clerk of the Court using CM/ECF.   I also hereby certify that, on November 8,

5    2024, my law firm emailed a courtesy copy of this document to Defendants' counsel at:

6                                Trevor Bradford, Esq.
                               INTELLECTUAL STRATEGIES
7                               1371 North 1075, Suite 3
                                Farmington, Utah 84025
8                               trevor@intellectualstrategies.com

9
                               By: /s/ Chad D. Hansen
10                              CHAD D. HANSEN
                               Virginia Bar No. 96705
11                               KILPATRICK TOWNSEND & STOCKTON LLP
                               1001 West Fourth Street
12                              Winston-Salem, North Carolina 27191
                               Telephone: (336) 607-7308
13                              Facsimile: (336) 734-2616
                               chadhansen@ktslaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1